**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

ALEX BENNETT,

        Movant,

    v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 2:16-cv-33

(Case No. 2:12-cr-5)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Alex Bennett ("Alex Bennett"), who is currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) For the reasons which follow, the Court **DENIES** Bennett's Motions to Amend/Supplement. (Docs. 5, 8, 12.) Moreover, I **RECOMMEND** this Court **DENY** Bennett's Motion to Vacate, Set Aside, or Correct his Sentence, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Bennett a Certificate of Appealability and *in forma pauperis* status on appeal.

## BACKGROUND

After entry of a guilty plea, Bennett was convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). J., United States v. Bennett, 2:12-cr-5 (S.D. Ga. Mar. 1, 2013), ECF No. 42. The Honorable Lisa Godbey Wood sentenced Bennett to 180 months' imprisonment. Id. Bennett's sentence was calculated based on his designation as an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), due to his four prior convictions for robbery, robbery by sudden snatching

("RBSS"), sale of cocaine, and sale of marijuana. (Pre-Sentence Investigation Report ("PSI"), ¶¶ 22, 26–27, 30, 31, 36.) Bennett did not file an appeal. On February 29, 2016, Bennett filed this Section 2255 Motion contending that he should be resentenced in light of the United States Supreme Court's decision in Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551 (June 26, 2015). (Doc. 1.)

## DISCUSSION

Bennett asserts that his sentence was improperly enhanced after the Supreme Court's decision in Johnson. Specifically, Bennett argues that his conviction for RBSS is no longer a predicate violent felony because it falls under the ACCA's residual clause. (Doc. 1, p. 4.) The Government argues that, although Bennett's RBSS offense is no longer a predicate violent felony after Johnson, Bennett still qualifies as an armed career criminal based on his three separate convictions for robbery and serious drug offenses. (Doc. 3, p. 3.) The Government provided Shepard documents to support this contention.[1]

Bennett then filed a Motion to Amend/Supplement his Section 2255 Motion to include arguments that his drug convictions are not predicate ACCA offenses and that his attorney rendered ineffective assistance of counsel for not investigating those drug convictions. (Doc. 5.) The Government filed a Response, urging the Court to deny Bennett's Motions due to the untimeliness of his claims. (Doc. 10.)

### I.      Whether Bennett is Entitled to Relief Pursuant to Johnson

Under the ACCA, any person who violates 18 U.S.C. § 922(g) and has on three or more occasions been convicted for a "serious drug offense" or "violent felony" will receive a

---

[1] "[A] later court determining the character of [a previous conviction] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16 (2005). These types of documents are commonly referred to as "Shepard documents."

mandatory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). "Serious drug offense" means "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii). In Johnson, the Supreme Court explained that the ACCA:

> defines 'violent felony' as follows: 'any crime punishable by imprisonment for a term exceeding one year . . . that—'(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.'* § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

___ U.S. at ___, 135 S. Ct. at 2555–56. The Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process[.]" ___ U.S. at ___, 135 S. Ct. at 2563. However, the Court also emphasized that its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id.

## A. RBSS Conviction

Bennett argues that, because his RBSS conviction was considered a violent felony under the ACCA's now-defunct residual clause, the Government can no longer use this conviction to categorize him as an armed career criminal. (Doc. 1, p. 4.) The Government concedes that Bennett's RBSS conviction no longer qualifies as an ACCA predicate violent felony after the Supreme Court's decision in Johnson. (Doc. 3, p. 3); see also United States v. Johnson, 572 F. App'x 833, 835 (11th Cir. 2014) ("[W]e have held that 'robbery by sudden snatching' is a 'violent felony' under the residual clause of the ACCA.") (citing United States v. Welch, 683 F.3d 1304, 1312–13 (11th Cir. 2012).

However, even without the RBSS conviction, Bennett still qualifies as an armed career criminal, and his sentence enhancement is still applicable. As his PSI makes clear, the Court also considered Bennett's convictions for robbery and sales of marijuana and cocaine in determining his armed career criminal status. (PSI, ¶¶ 22, 27, 31.)

## B.    Robbery Conviction

Although Bennett challenges his RBSS conviction throughout the bulk of his Section 2255 Motion, he briefly argues that his "robbery by force [conviction] falls in the similar kind of definition of the residual clause[.]" (Doc. 1, p. 18.) However, Bennett's robbery conviction categorically qualifies as a violent felony under the "elements clause" of the ACCA. A violent felony under subsection (i), or the "elements clause," of the ACCA "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

At the time of Bennett's offense, the Georgia statute for robbery provided that:

A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another:

> (1) By use of force;
>
> (2) By intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another; or
>
> (3) By sudden snatching.

O.C.G.A. § 16-8-40(a). The Shepard documents for Bennett's robbery conviction, specifically the indictment, indicate that he was charged under the "use of force" provision and not the "intimidation" provision, as Bennett argues.[2] (Doc. 3-1, p. 2.) Under Georgia law, robbery by

---

[2] Bennett is also under the misconception that "robbery by force can be committed by intimidation only." (Doc. 1, p. 18.) However, as the Georgia statute makes clear, robbery by use of force and robbery by intimidation are separate and distinct crimes. O.C.G.A. §§ 16-8-40(a)(1) & (2).

use of force requires "actual force . . . . consist[ing] in personal violence or that degree of force that is necessary to remove articles so attached to the person or clothing as to create resistance, however slight." Bellamy v. State, 750 S.E.2d 395, 396 (Ga. Ct. App. 2013). This language directly parallels the language in the elements clause definition of a violent felony under the ACCA.

Thus, because Bennett's robbery conviction qualifies as a violent felony under the elements clause of the ACCA, it remains undisturbed by the Supreme Court's decision in Johnson. See Johnson, ___ U.S. at ___, 135 S. Ct. at 2563 ("[Johnson] decision does not call into question application of the Act to . . . the remainder of the Act's definition of a violent felony.").

**B.**      **Drug Offense Convictions**

Bennett also attempts to challenge his drug offense convictions through his various Motions to Amend/Supplement. (Docs. 5, 8, 12.) Bennett argues that his two drug convictions actually only qualify as one offense, (doc. 5), or alternatively, that neither of his drug convictions qualify as "serious drug offenses" under the ACCA, (doc. 8). However, Bennett is precluded from making these arguments due to their untimeliness.

Motions made pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations period. 28 U.S.C. § 2255(f). This limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Bennett was sentenced to 180 months' imprisonment on February 28, 2013, and the Court's final judgment was entered on March 1, 2013. Min. Entry & J., United States v. Bennett, 2:12-cr-5 (S.D. Ga. Feb. 28 and Mar. 1, 2013), ECF Nos. 41, 42. Bennett had fourteen (14) days, or until March 15, 2013, to file a notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i); Fed. R. Civ. P. 6(a); Murphy v. United States, 634 F.3d 1303, 1307 (11th Cir. 2011) (noting that, when a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires). Because Bennett did not file an appeal, he had until March 15, 2014, to file a timely Section 2255 motion. 28 U.S.C. § 2255(f)(1). However, due to the Supreme Court's retroactive decision in Johnson, Bennett had until June 26, 2016, to file a motion challenging any violent felony classifications under the ACCA's residual clause. 28 U.S.C. § 2255(f)(3). To be clear, this extended statute of limitations applied only to Bennett's Johnson claims and not toward any challenges to his serious drug offense convictions or his robbery by force conviction. In re Rogers, 825 F.3d 1335, 1340 (11th Cir. 2016) (Convictions under the ACCA's elements and enumerated crimes clauses or as a serious drug offense "do[] not 'contain' a Johnson claim.").

Bennett executed his Section 2255 Motion on February 29, 2016—timely for his Johnson claims, but nearly two years after the expiration of the applicable statute of limitations period for his serious drug offense claims. Consequently, Bennett's Motions to Amend/Supplement his Section 2255 Motion to include challenges to his serious drug offense convictions are untimely under Section 2255(f)(1). Townsend v. Crews, No. 14-24126-CIV, 2014 WL 6979646, at *6 (S.D. Fla. Dec. 9, 2014) ("The law is and always has been that a statute of limitations creates a

definitive deadline; a complaint or petition filed one day late . . . is untimely, just as if a year late.") (quoting Turner v. Singletary, 46 F. Supp. 2d 1238, 1240 (N.D. Fla. 1999)).

Although Bennett does not contend that the statute of limitations should be tolled, he does argue that the limitations period should be defined by Section 2255(f)(4). (Doc. 11, p. 2 ("[T]he motion is timely one year from which the diligence was discovered. And it was discovered in November while assessing the law library[.]").) However, Section 2255(f)(4) specifically calls for discovery of the "facts supporting the claim" and not the legal issue. 28 U.S.C. § 2255(f)(4) (emphasis added). The facts underlying Bennett's serious drug offenses could have been "discovered" as soon as the final judgment was entered in this case on March 1, 2013, if not earlier. Bennett admitted during the sentencing hearing that he had viewed—and did not object to—the PSI upon which his sentence was partially based. Sent. Hr'g., United States v. Bennett, 2:12-cr-5 (S.D. Ga. Feb. 28, 2013). The PSI contained, *inter alia*, the convictions qualifying Bennett for the ACCA sentence enhancement. Furthermore, Bennett fails to include, in any of his pleadings, facts demonstrating his due diligence or circumstances preventing his discovery of any facts underlying his claims, despite his due diligence. Thus, the statute of limitations set forth in Section 2255(f)(4) is inapplicable to Bennett's Section 2255 Motion.

Yet, even if Bennett's challenge to his drug convictions were timely, the Shepard documents surrounding his convictions reveal that his claims would still fail. As stated earlier, a serious drug offense under the ACCA is, in relevant part, "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii). Bennett's sale of cocaine and marijuana unequivocally qualify as serious drug offenses under this definition.

Georgia law prohibits "any person to . . . sell . . . any controlled substance." O.C.G.A. § 16-13-30(1)(b). Selling cocaine, a Schedule II controlled substance, calls for imprisonment of "not less than five years nor more than 30 years." O.C.G.A. §§ 16-13-26(1)(D) & 16-13-30(1)(d). Selling marijuana calls for imprisonment of "not less than one year nor more than ten years." O.C.G.A. § 16-13-30(j)(2). Thus, both Bennett's convictions for sale of cocaine and sale of marijuana had a "maximum term of imprisonment of ten years or more" and qualify as serious drug offenses under the ACCA.

Bennett also contends that these two convictions only count as one because they occurred "on the same day" and he was "sentenced to both at the same time, on the same day, in the same charging instrument." (Doc. 5, p. 1.) However, an offense is considered to be committed on "occasions different from one another," for purposes of the ACCA, as long as the "predicate crimes are successive rather than simultaneous . . . especially if the defendant committed the crimes in different places." United States v. Pope, 132 F.3d 684, 692 (11th Cir. 1998); see also United States v. Weeks, 711 F.3d 1255 (11th Cir. 2013).

Bennett was convicted on three counts for sale of controlled substances occurring on February 26, 1999. (Doc. 10-1, p. 2.) Count One was for a sale of cocaine at "the Edgewood Villa Apartments' parking lot." (Doc. 10-1, p. 2.) Count Two was for a sale of marijuana in the same location, and Count Three was for a separate sale of marijuana at "the American Legion Post 589." (Id.) The sale of cocaine from Count One and the sale of marijuana in Count Three occurred in two separate locations and at two separate times. Consequently, Bennett's drug convictions qualify as two separate serious drug offenses under the ACCA. Accordingly, for all the reasons set forth above, the Court **DENIES** Bennett's Motions to Amend/Supplement, (docs. 5, 8, 12).

Bennett has the requisite qualifying predicate offenses under the ACCA: robbery, sale of cocaine, and sale of marijuana. The residual clause had no bearing on his status as an armed career criminal, and thus, <u>Johnson</u> also has no effect on the resulting sentence. Bennett is not entitled to his requested relief, and therefore, I **RECOMMEND** the Court **DENY** his Motion to Vacate, Set Aside, or Correct his Sentence.

## II. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Bennett leave to appeal *in forma pauperis* and a Certificate of Appealability ("COA"). Though Bennett has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court <u>must</u> issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); <u>see also</u> Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. <u>Busch v. Cty. of Volusia</u>, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or

fact." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v. United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id.</u> "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of Bennett's pleading and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Bennett a Certificate of Appealability, Bennett is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there

are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** Bennett *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Bennett's Motions to Amend/Supplement. (Docs. 5, 8, 12.)  Moreover, I **RECOMMEND** this Court **DENY** Bennett's Motion to Vacate, Set Aside, or Correct his Sentence, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Bennett a Certificate of Appealability and *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Bennett and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 28th day of August, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA